17 F.3d 394
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Barry S. GLASER, Plaintiff-Appellant,
v.
BOARD OF BAR EXAMINERS, the Supreme Court of the State of
Hawaii, et al., Defendants-Appellees.
 No. 92-16331.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 17, 1993.*
Decided Feb. 11, 1994.
 
 Before: WALLACE, Chief Judge, GARTH** and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 FACTS
 
 2
 Appellant took the summer 1990 Hawaii bar exam. He scored 72.4% on the essay exam and 67.2% on the MBE, for a combined average of 69.8%, only 0.2% below passing. The Hawaii Supreme Court ordered him not admitted. Hawaii procedure at that time was to regrade automatically, prior to obtaining applicants' MBE scores, all essay exams with scores between 65% and 69.9%. Appellant's essays, which exceeded this range, were not regraded.
 
 
 3
 Appellant protested. He sent two letters to Hawaii, each addressed to the Hawaii Board of Bar Examiners ("Board") and the Hawaii Supreme Court. He said regrading was unfairly, unequally and prejudicially limited only to essay exams scoring between 65% and 69.9%. He requested his essays be regraded. The Court responded with a document captioned "In re Barry Stuart Glaser for Admission to the Bar of the State of Hawaii--July 1990 Bar Examination." It was entitled "Order," and stated:
 
 
 4
 Upon consideration of the petition by Barry Stuart Glaser, seeking to regrade his bar examination scores, and the Court being advised by the Board of Examiners that the bar examinations were properly graded and reviewed,
 
 
 5
 IT IS HEREBY ORDERED that the petition be denied. Defendant Chief Justice Lum signed the Order. The Board responded to a later letter from Appellant and declined to recommend regrading in light of the Hawaii Supreme Court's Order.
 
 
 6
 Appellant then filed this suit under 42 U.S.C. Sec. 1983 against the Hawaii Supreme Court, Chief Justice Lum in his official capacity, and the Board (collectively "Defendants" or "Appellees"). Appellant alleged, inter alia, that (1) the regrading policy violated due process and equal protection (a) as applied to Appellant and (b) in general and (2) the actions and practices of the Supreme Court in response to Appellant's letters deny due process. Appellant also alleged that other than allowing him to send letters, the Board denied him means of presenting his case; no formal pleading, appearance by him or his attorney, or any further hearing was allowed. Only the Board's clerk presented Appellant's views to the Board. Appellant sought money damages; equitable, injunctive, and declaratory relief; and attorneys' fees.
 
 
 7
 After Appellant took the deposition of Judge Heely, a Board member, Defendants moved to dismiss or for summary judgment, showing the following: The Hawaii Supreme Court has "ultimate authority" over legal practice in Hawaii. The Board gives the bar exam and determines qualifications. Board members who grade exams are volunteers. In 1990, regrading was done by the initial grader of each question. The essay exam was 17 questions scored 0-100. The average score was the essay exam score. On regrading, the original essay scores, whether higher or lower, were discarded. Only automatic regrading was done; requests for regrading were not granted. The National College of Bar Examiners grades the MBE.
 
 
 8
 In 1990, a Board committee reviewed the bar exam process. As a result, the Board made several changes, including to regrading. In 1991, essay exams of applicants whose averaged MBE and essay scores equalled 67.5% to 69.9% were regraded. The final essay score was the average of the original and regrade scores. In 1992, the Board adopted further changes, including elimination of all regrading.
 
 
 9
 The district court granted Defendants' motion. Because the court considered facts not in the pleadings, the ruling is best understood as a summary judgment. Fed.R.Civ.P. 12(c). The district court held that it lacked subject matter jurisdiction over Appellant's claims that Hawaii unlawfully denied him admission. As to Appellant's general claims, the district court held that the challenged procedures were constitutional. The court denied attorneys' fees. From these decisions, Appellant appeals. We review subject matter jurisdiction issues and summary judgment de novo. Reebok Int'l, Ltd. v. Marnatech Enter., 970 F.2d 552, 554 (9th Cir.1992); Jones v. Union Pac. RR., 968 F.2d 937, 940 (9th Cir.1992). When the district court ruled, Appellant had pending a motion to amend his complaint to add "Doe" defendants.
 
 ANALYSIS
 I. Individualized Claims
 
 10
 Appellant claims the district court misunderstood Appellant's position regarding his individual claims. Appellant cites Brown v. Board of Bar Exam., 623 F.2d 605 (9th Cir.1980), which said that an unsuccessful bar applicant can bring two claims: (1) a general constitutional challenge to the bar admissions policies; and (2) a claim that he was unlawfully denied admission. 623 F.2d at 609. Federal district courts have jurisdiction over (1) under 28 U.S.C. Sec. 1343. Id. A type (2) claim may be reviewed only in the U.S. Supreme Court. 623 F.2d at 609-10; see also Tofano v. Supreme Court of Nevada, 718 F.2d 313, 314 (9th Cir.1983). Appellant says he raises only a type (1) claim. Appellant asserts his complaint requests money damages because the district court ruled before Appellant could delete his individual claims.
 
 
 11
 In rebuttal, Appellees argue that dismissal of the type (2) claims was proper under District of Columbia Ct. App. v. Feldman, 460 U.S. 462 (1983), which holds the same as Brown. Appellees are correct. The district court had no jurisdiction, under Feldman and Brown, over the individual claims alleged in Appellant's complaint.
 
 II. General Claims
 A. The Regrading Policy
 1. Mootness
 
 12
 Appellees suggest that Appellant's general claims regarding regrading are moot because the state changed the regrading policy independently of Appellant and no longer regrades. Generally, "voluntary cessation of allegedly illegal conduct does not ... make the case moot." County of L.A. v. Davis, 440 U.S. 625, 631 (1979) (quotation attributions omitted). However, under Davis, such a case becomes moot if the state shows that (1) there is no reasonable expectation the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. Id. Appellees also claim this case is not "capable of repetition yet evading review." See Roe v. Wade, 410 U.S. 113, 125 (1973). In response, Appellant argues only that the state should consent to a judgment if it actually will never implement this policy again.
 
 
 13
 The issue is not moot. No facts indicate that the effects of the alleged violation have been eradicated. No one has regraded Appellant's exam nor the exam of any applicant similarly situated; nor have Appellees shown that Appellant and similar persons have retaken or passed the bar since failing it. The "burden of demonstrating mootness is a heavy one." Davis, 440 U.S. at 631 (internal quotations omitted). The state has not met that burden.
 
 2. The Merits
 
 14
 Appellant claims a factual dispute exists whether a legitimate purpose supports limiting regrading of essay exams to those with scores between 65% and 69.9%. Under Schware v. Board of Bar Exam., 353 U.S. 232, 239 (1957), the government must show a rational basis.[1] Brown, 623 F.2d at 610. Appellant asserts that no rational basis is presently shown in the record. Appellant claims Judge Heely failed to explain any rational basis when asked. Taken in the light most favorable to Appellant, Appellant claims this failure is evidence there is no rational basis. Appellant also claims the rational basis asserted by the district court is contradicted by Judge Heely's deposition. The district court's opinion says regrading is meant to insure accuracy and the limitation is "cost effective." Appellant claims regrading before an applicant's MBE score is known is in fact wasteful because at that point no one knows who needs the extra points. In his reply brief, Appellant cites Boddie v. Connecticut, 401 U.S. 371 (1971), and United States Dep't of Agr. v. Moreno, 413 U.S. 528 (1973).
 
 
 15
 Under rational basis review, the regrading limitation must be upheld "if there is any conceivable basis" for it. Cash Inn of Dade, Inc. v. Metropolitan Dade Cty., 938 F.2d 1239, 1241 (11th Cir.1991); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464 (1981); Potts v. Honorable Justices of the Supreme Court of Hawaii, 332 F.Supp. 1392, 1397 (D.Haw.1971). Appellees assert that regrading was to "insure accuracy." Scores of 70 or above were not regraded because regrading would put them at risk of failing. Appellees cite Levanti v. Tippen, 585 F.Supp. 499, 507 (S.D.Cal.1984), in which time savings justified otherwise arbitrary cut-off points for regrading. Appellees note that regrading was of only marginal benefit; thus, no essays below a 65 average were regraded, and now none are. Appellees claim cut-off points for passing or reviewing bar exams have been upheld, at least when no MBE score is averaged in later. Tyler v. Vickery, 517 F.2d 1089, 1101-03 (5th Cir.1975), cert. denied, 426 U.S. 940 (1976); Bailey v. Board of Law Exam., 508 F.Supp. 106, 110 (W.D.Tex.1980).[2]
 
 
 16
 We hold the regrading limitation has a rational basis.[3] The essays were regraded before the scores were sent off to be combined with MBE scores. Judge Heely's Deposition, ER 52, 46. This decision to regrade before sending the scores was justified by convenience and simplicity. Original grading was done all in one weekend during which graders would check into a hotel. Id. at 22-23. This procedure aimed to provide graders "some quiet time for the purpose of being able to concentrate and grade the answers in one setting." Id. at 23. Though regrading was impossible in this one weekend, regrades were to be done as soon after original grading as possible. Id. at 23. This closeness in time could well promote continuity and consistency in the grading.
 
 
 17
 In this context, limiting regrades to essay exams with averages between 65% and 69.9% is rational. Scores in that range are more likely to fail than scores over 70 when the essay scores are combined with the MBE scores. Moreover, given positive correlation between essay scores and MBE scores, applicants scoring below 65% on the essay exam may well not score above 75% on the MBE (to reach a combined passing score), or so few might do so as to make regrading of essay exams below 65% inefficient. Id. at 53-54 (discussing the correlation between essays and the MBE that has developed over the years). Time constraints also provide a rational basis for the cut-off. Regrading prior to combination with MBE scores being justified here, we find persuasive the cases cited by Appellees in which no MBE component was involved. Tyler, 517 F.2d at 1101-03; Bailey, 508 F.Supp. at 110.
 
 
 18
 Appellant misinterprets Judge Heely's refusal to answer the question regarding rational basis. The witness refused to answer because the question required a legal conclusion. He did give reasons for the regrading and limitation policy. Plaintiff presents no affidavits suggesting Judge Heely's testimony is untrue. Thus, no issue of material fact is before the court.
 
 
 19
 Moreover, Boddie and Moreno are distinguishable; both involved policies dissimilar to that at issue here. Boddie, 401 U.S. at 371 (filing fee for divorce case); Moreno, 413 U.S. at 528 (exclusion of certain households from food stamp benefits). Moreover, those policies were unjustifiable, unlike the policies at issue here.
 
 
 20
 This court's job is not to determine the best policy but only to determine whether the policy at issue is rational. "Even if the court is convinced that [Hawaii] has made an improvident, ill-advised, or unnecessary decision, it must uphold the [policy] if it bears a rational relation to a legitimate governmental purpose." Cash Inn of Dade, Inc., 938 F.2d at 1241; Clover Leaf Creamery Co., 449 U.S. at 464-70. We believe it does.
 
 B. Objection Review Policy
 
 21
 Appellant claims the exam objection review process gives less process than is constitutionally due. He claims a license to practice law is an interest to which due process applies; that a kind of review process was provided to Appellant and others like him; that the process provided was begun without any formal petition, was secret and without opportunity to present evidence, a record, or even meaningful arguments by those in Appellant's position; and that applicants might suffer meaningful loss if error in the process occurs. Appellant claims Richardson v. McFadden, 540 F.2d at 752, rev'd, 563 F.2d at 1130, requires some process of review of exam results. Appellant also claims that any process given must meet due process minimums, citing Lindsey v. Normet, 405 U.S. 56, 77 (1972).
 
 
 22
 Appellees argue that failure to provide any procedure for review of a failing grade does not constitute a denial of due process when the applicant can retake the bar. Tyler, 517 F.2d at 1103-05; Whitfield v. Illinois Bd. of Law Exam., 504 F.2d 474, 477-78 (7th Cir.1974); see Chaney v. State Bar of California, 386 F.2d 962, 966-67 (9th Cir.1967) (dicta), cert. denied, 390 U.S. 1011 (1968). The premise of these cases is that a review process is no more effective in correcting inadequate grading than is an applicant's retaking the bar. Tyler, 517 F.2d at 1104-05; Whitfield, 504 F.2d at 478. Appellees contrast failing to pass the bar with a determination of an applicant's moral unfitness, regarding which a hearing is required on request.
 
 
 23
 Though neither party notes it, this court later adopted as its holding the proposition espoused in the Chaney dicta. Sutton v. Lionel, 585 F.2d 400, 403 (9th Cir.1978); see also Giannini v. Real, 911 F.2d 354, 357 (9th Cir.) (citing Sutton and Whitfield approvingly), cert. denied, 498 U.S. 1012 (1990). Sutton, therefore, controls. Hawaii has given Appellant all that due process requires. The language from Lindsey v. Normet cited by Appellant, 405 U.S. at 77, applies only to equal protection analysis and is of no use to Appellant, who makes no equal protection argument here.
 
 III. Attorneys' Fees
 
 24
 Appellant claims attorneys' fees under Sec. 1988 should be awarded him because his actions caused a change in the regrading policy. The Board changed its policy in February of 1991, after Appellant had begun to object and threatened litigation. Appellant also claims Appellees failed to notify him that the regrading policy had been changed. Appellant notes, however, that notification of the 1992 change in the regrading policy (to no regrading) was mailed to February 1992 examinees. He claims that his actions caused this notice to be sent. Appellant cites Hewitt v. Helms, 482 U.S. 755 (1987), that "If the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed." 482 U.S. at 761.
 
 
 25
 Appellees note that Hewitt v. Helms is contrary to Appellant's arguments. In Hewitt, the Court denied attorneys' fees because the plaintiff "did not and could not get redress from promulgation of the [new] regulations," even though the new regulations were prompted by an appellate court decision in his case. 482 U.S. at 763; see also Rhodes v. Stewart, 488 U.S. 1 (1988). Appellees argue that because Appellant in this case got no redress from the new policies, he could not be awarded attorneys' fees under Hewitt. Appellees are correct. Appellees have not altered their conduct toward plaintiff, only toward others.
 
 CONCLUSION
 
 26
 We AFFIRM. We find it unnecessary to address Appellees' arguments relating to the Eleventh Amendment,[4] judicial immunity, and the definition of persons under 42 U.S.C. Sec. 1983. Because Appellant's claims have no merit, we decline to remand to allow Appellant to amend his complaint.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Leonard I. Garth, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Rational basis is the equal protection and due process standard. The district court through Appellant's claim to be based only on equal protection. Appellees correctly note that the standard is the same for a substantive due process claim. Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 487-88 (1955) (upholding a law for reasons of which the legislature "may have" thought); Kaiser Dev. Co. v. City & Cty. of Honolulu, 649 F.Supp. 926, 943 (D.Haw.1986), aff'd, 898 F.2d 112 (9th Cir.1990), cert. denied, 499 U.S. 947, and cert. denied sub nom., Lyman v. City & Cty. of Honolulu, 499 U.S. 954 (1991)
 
 
 [2]
 Appellees argue that Richardson v. McFadden, 540 F.2d 744 (4th Cir.1976), is not to the contrary because in that case there were elements of capriciousness present in the grading which are not present here. Appellees are correct. However, Richardson is neither a persuasive nor a valid decision, having been reversed en banc. Richardson v. McFadden, 563 F.2d 1130 (4th Cir.1977) (en banc) (reversing decision at 540 F.2d at 744 inasmuch as this earlier opinion granted any relief), cert. denied, 435 U.S. 968 (1978)
 
 
 [3]
 Because the policy is justified under equal protection rational basis review, "it follows a fortiori that the [policy] does not violate the Fourteenth Amendment's Due Process Clause." Clover Leaf Creamery Co., 449 U.S. at 470 n. 12
 
 
 [4]
 The Eleventh Amendment does not affect our jurisdiction over Appellant's general claims for injunctive relief. Ex Parte Young, 209 U.S. 123 (1908); Pulliam v. Allen, 466 U.S. 522, 541-42 (1984)