JOHN J. SCINTO *v.* R. DAVID STAMM ET AL.[*]

SUPERIOR COURT     JUDICIAL DISTRICT     FILE NO. 90268533
OF FAIRFIELD

---

[*] Affirmed. *Scinto* v. *Stamm*, 224 Conn. 524, 620 A.2d 99, cert. denied,
U.S.   , 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993).

Memorandum filed January 14, 1992

*John J. Scinto,* pro se, the plaintiff.

*Carolyn K. Querijero,* assistant attorney general, and *Richard Blumenthal,* attorney general, for the defendants.

McGrath, J. Before the court are summary judgment motions by the plaintiff and by the defendants. The plaintiff, John J. Scinto, proceeding pro se, has brought this action against the named defendant, R. David Stamm, administrative director of the Connecticut Bar Examining Committee (CBEC), and the CBEC itself for the allegedly unconstitutional grading procedures used on the state bar examinations. The following relevant undisputed facts are taken from the pleadings, exhibits and affidavits.

The plaintiff failed both the July, 1989, and February, 1990 exams, with scores of 262.79 and 260.37 respectively. The grading procedures employed by the CBEC on the exams, as attested to by Stamm, were as follows: The purpose of the bar exam is to test the minimal competency of a candidate to practice law in Connecticut. According to Stamm's affidavit: "The present system of grading the essay portion of the exam involves multiple graders per question, calibration of graders, conversion of essay grades to the Multi-State Bar Examination (MBE) scale, and a review of all applicants whose total scores are within ten points of the passing score." Stamm further

attested that for the July, 1989 exam, three graders were assigned to each essay question and each grader initially read one third of the answer booklets for that question. For the February, 1990 exam, one of two graders initially read one half of all the answers for each question. Stamm's affidavit further indicated that "[a] candidate whose total score after the first reading of the essay portion falls within 10 points of the total passing score (264) has all his essay answers reread and graded by a different grader." If the two readings result in the same grade on a particular question, that grade becomes final. If the two grades given differ by one point, the average of the two becomes the final grade for that answer. If the two grades given differed by more than one point, then the essay was examined by a third reader and a consensus grade based on the three separate grades became final for a particular answer.

Prior to the initial reading of an essay answer, the graders assigned to a particular question meet to calibrate a grading scale for that question. "The graders develop this grading scale in a process during which they read and analyze approximately fifty answer booklets, considering the analysis provided by the drafter of the question, their own legal analysis, and their own knowledge of the relevant law."

Stamm attested further that "[t]his basic system of grading is presently in use in a majority of the states, and is considered state of the art." The passing score of 264 on the MBE scale was set after consultation with testing experts, and is based on the historical average passing score for Connecticut bar applicants on the MBE portion of the exam. Stamm attested that those procedures were followed in grading the plaintiff's bar examination essay answers in question.

In his complaint, the plaintiff seeks a hearing by the court on the essay portion of the exam, admission to the bar, a declaratory judgment that the bar exam rules and regulations are unconstitutional, and a declaratory judgment requiring the examiners to change their grading procedure.

The plaintiff alleges that he deserved to be given more points on certain essays, and that the CBEC's customs, grading procedures and rules result in gross grading errors that unconstitutionally violate due process guarantees under the federal and state constitutions.

The defendants answered the complaint and asserted sovereign immunity as a special defense. The court, *Thim, J.,* had earlier denied the defendants' motion to dismiss based on sovereign immunity. The plaintiff answered the special defense, thereby closing the pleadings. See Practice Book § 379. The parties have filed memoranda of law in support of their respective motions and in opposition to their adversary's motion. This court heard the parties' arguments on the cross motions for summary judgment on November 4, and December 2, 1991.

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wilson* v. *New Haven,* 213 Conn. 277, 279, 567 A.2d 829 (1989); see also Practice Book § 384. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." *Nolan* v. *Borkowski,* 206 Conn. 495, 500, 538 A.2d 1031 (1988).

In support of his motion for summary judgment, the plaintiff argues that in light of his "allegations . . .

other motions, evidence, memoranda, facts and law," he is entitled to summary judgment. The defendants argue in opposition that the plaintiff has failed to submit evidence sufficient to satisfy his burden of proof.

The plaintiff submits his own affidavit and copies of certain essay questions and his answers. That affidavit merely repeats in conclusory form the criticisms of the CBEC's grading procedures that the plaintiff has made in his pleadings and memoranda. The plaintiff has neither submitted evidence to support his allegations that the CBEC's procedures resulted in gross grading errors nor evidence to rebut Stamm's affidavit as to the procedures employed to grade the plaintiff's exams.

The court finds that the plaintiff is not entitled to the relief he seeks—admission to the bar, a court hearing on his essay answers, and a declaratory judgment—as a matter of law, as will be discussed shortly. The court holds, therefore, that the plaintiff is not entitled to summary judgment on his complaint as a matter of law.

In support of their motion for summary judgment, the defendants argue that: (1) the CBEC's bar examination grading procedures do not, as a matter of law, offend due process principles; (2) the plaintiff is not entitled to the relief he seeks, (i.e., a court hearing); (3) the plaintiff has failed to give proper notice as required by the declaratory judgment rules in the Practice Book; and (4) sovereign immunity bars this action. In opposition, the plaintiff reiterates the arguments he makes in support of his summary judgment motion.

"A State cannot exclude a person from the practice of law . . . in a manner or for reasons that contravene the Due Process . . . Clause of the Fourteenth Amendment." *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957).

"A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Id., 239.

The plaintiff alleges that the CBEC's grading procedures violate due process because the "system is obviously and grossly arbitrary and capricious in that it does not permit a grader to give a grade of minimal competency or barely passing on any answers, although the examination purports to test minimal competency."

Courts have uniformly held that state bar examination procedures do not violate due process principles. Annot., 30 A.L.R. 934, 937 (1976 and Sup. 1991). Courts generally employ a rational basis test to determine whether a grading procedure is constitutional. "[T]he focus of the rational relationship test is not whether the state has superior means available to accomplish its objectives, but whether the means it has chosen is a reasonable one." *Tyler* v. *Vickery,* 517 F.2d 1089, 1102 (5th Cir. 1975), cert. denied, 426 U.S. 940, 96 S. Ct. 2660, 49 L. Ed. 2d 393 (1976).

The plaintiff has not submitted any evidence to show how the grading procedures are unreasonable. He makes that conclusion on the basis of his own speculation that he deserves to be admitted to the bar because he should have received more points on certain essay answers.

In *Tyler* v. *Vickery,* supra, 1102, the court held that the Georgia bar exam, consisting of the MBE and essay questions, is "designed solely to assess the legal competence of bar examinees. . . ." It is, therefore, a "rationally supportable examination" because it is "designed for the purpose for which it is being used, and . . . utilize[s] a cutoff score related to the qual-

ity the examination purports to measure." Id.; accord *McGinn* v. *State Bar Board,* 399 N.W.2d 864 (N.D. 1987).

It is clear that the plaintiff has not met his burden of rebutting the facts set forth in Stamm's affidavit. See *Cummings & Lockwood* v. *Gray,* 26 Conn. App. 293, 298, 600 A.2d 1040 (1991). Bar examinations that test minimal competence to practice law are, as a matter of law, rationally related to a state's interest in licensing competent attorneys. The court finds, therefore, that the plaintiff's due process argument regarding the CBEC's grading procedures must fail because he has not sustained his burden of rebutting the facts presented by the defendants.

The plaintiff's prayer for relief requests the court to grant him a hearing on his essay answers and, thereafter, to admit him to the bar. The defendants argue in support of their motion for summary judgment that the plaintiff is not entitled to that relief as a matter of law.

Although Connecticut requires the court to hold a hearing when a bar applicant is denied admission by a character committee; *In re Application of Dinan,* 157 Conn. 67, 72, 244 A.2d 608 (1968); no analogous right exists upon failure of the actual bar examination.

Other courts have refused to review an applicant's essay answers in the absence of allegations or a showing that the applicant failed because of fraudulent conduct by the bar examiners. See *Staley* v. *State Bar of California,* 17 Cal. 2d 119, 121, 109 P.2d 667 (1941); *Bowens* v. *Board of Law Examiners,* 57 N.C. App. 78, 83, 291 S.E.2d 170 (1982); *Petition of Pacheco,* 85 N.M. 600, 603, 514 P.2d 1297 (1973). Also, some courts have held that a postexamination hearing by a court is neither constitutionally necessary nor practical. See *Lucero* v. *Ogden,* 718 F.2d 355, 358–59 (10th Cir. 1983),

cert. denied, 465 U.S. 1035, 104 S. Ct. 1308, 79 L. Ed. 2d 706 (1984) (postexamination hearing would not be any more effective than reexamination, and challenging particular essay answer grade is beyond scope of bar examination review by court); *Tyler* v. *Vickery,* supra, 1103 (postexamination hearing not constitutionally required); *Whitfield* v. *Illinois Board of Law Examiners,* 504 F.2d 474, 477 (7th Cir. 1974) (ability to retake Illinois bar examination unlimited number of times makes court hearing and other procedures unnecessary); *Singleton* v. *Louisiana,* 413 F. Sup. 1092, 1098 n.14 (E.D. La. 1976) (postexamination hearing not constitutionally required); *In re Mead,* 352 Mass. 253, 256, 361 N.E.2d 403, cert. denied, 434 U.S. 858, 98 S. Ct. 182, 54 L. Ed. 2d 131 (1977); *McGinn* v. *State Bar Board,* supra, 867 (court's function is not to regrade bar examination answers).

Connecticut allows applicants an unlimited number of opportunities to retake the bar examination. Practice Book § 15A. The court finds, in light of the above cases, that this unlimited reexamination right and the automatic review by the CBEC of bar examinations within ten points of the minimum passing score satisfy due process requirements as a matter of law. The court finds, therefore, that the plaintiff is not entitled to a postexamination hearing in court.

The plaintiff seeks a declaratory judgment that the CBEC's rules and regulations are unconstitutional and that the grading procedure should be changed.

The defendants argue that the plaintiff is not entitled to a declaratory judgment because he has failed to give notice to all interested parties as required by Practice Book § 390 (d). Practice Book § 390 provides in relevant part: "The court will not render declaratory judgments upon the complaint of any person . . . unless

all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof.''

"Compliance with the requirement of § 390 (d) . . . has been regarded by this court as essential to the jurisdiction of a court to render a declaratory judgment." *Connecticut Ins. Guaranty Assn.* v. *Raymark Corporation,* 215 Conn. 224, 229, 575 A.2d 693 (1990).

It is noted that, at a minimum, unsuccessful bar examination applicants would be interested in this suit and in the remedy if the plaintiff were successful. In *Pierce* v. *Zoning Board of Appeals,* 7 Conn. App. 632, 637, 509 A.2d 1085 (1986), the court defined those who would be interested in the subject matter of the declaratory judgment complaint as all "[t]hose members of the general public who might be able to establish classical aggrievement . . . ." A person is classically aggrieved when he or she has a specific, personal and legal interest in the subject matter of the decision and this specific interest has been specially and injuriously affected. Id., 636. It is clear that unsuccessful bar applicants would have a specific legal interest in a decision ruling that the CBEC's grading procedures are unconstitutional. The court finds that neither the plaintiff's declaratory judgment complaint nor his affidavit evince any attempt to notify those unsuccessful applicants or anyone else of this action. The plaintiff, therefore, has not complied with Practice Book § 390 (d) and, therefore, this court lacks subject matter jurisdiction to render the relief the plaintiff requests.

It is found that, as a matter of law, the plaintiff is not entitled to the relief he seeks. Accordingly, the plaintiff's motion for summary judgment is denied; the defendants' is granted.