[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On April 27, 1992, the plaintiff Hartford Casualty Insurance Co. (hereinafter "Hartford"), filed with the clerk's office a writ, summons and complaint naming the Town of Mansfield (hereinafter "the Town") and Schoenhardt Architects, Inc. (hereinafter "Schoenhardt") as co-defendants.
The three counts of the complaint alleged that the Town entered into a contract with Atlantic Coast Construction, Inc. ("hereinafter "Atlantic") for new construction and remedial work on one of the Town's schools. Schoenhardt was the architect for the project pursuant to a separate contract that it had with the Town. The plaintiff Hartford acted as surety for Atlantic by providing performance and labor and material payment bonds.
During the course of the work, Atlantic fired its electrical subcontractor, Windsor Electrical Service Co., Inc. (hereinafter "Windsor"). Hartford upon later inspection, discovered that Windsor's work was seriously deficient. Prior to the firing, however, the Town paid Atlantic $226,088.00 for the electrical work.
Hartford, acting as surety, paid Atlantic's subcontractors and suppliers to continue the work. The Town then terminated Atlantic because in its view Atlantic was in default of its contract with the Town and Atlantic failed to prosecute its work diligently. The Town then made demand upon Hartford to finish the work pursuant to Hartford's suretyship contract with Atlantic.
CT Page 10393 Hartford and the Town then entered into a Completion Agreement, whereby Hartford agreed to finish the work pursuant to its suretyship contract with Atlantic. Hartford then repaired and replaced Windsor's electrical work by using its own contractor at a cost to it of $262,125.46; the cost for repairing and replacing 95% of Windsor's previously performed work.
On August 3, 1992, Schoenhardt filed its answer (#111) denying that it inspected the project work, that it breached obligations to Hartford by accepting and certifying the Town's payment to Atlantic of $226,088.00 for Windsor's defective electrical work, that it acted negligently and that it breached any fiduciary obligations.
That was followed on August 7, 1992, by the filing of the Town's answer. In that answer the Town denied that it accepted or certified the work performed, that Hartford acted pursuant to the Town's requirements, that the scope of the work was defined and dictated by directives from the Town and that all such work was regularly inspected by the Town's personnel, that it owed a duty to Hartford to not disburse funds for improper work, that it too was negligent and that any harm caused to Hartford arose out of a breach of fiduciary obligations.
On August 24, 1992, the Town filed a motion for summary judgment on all three counts of Hartford's complaint (#120). In that motion the Town argues that it is the terms of the contract between an owner and the contractor that determine the conduct of both parties in relation to the surety, i.e., the terms of the contract between the Town and Atlantic determines the conduct of both parties in relation to Hartford. Additionally, it asserts that the Town did precisely what it was required to do under the terms of its contract with Atlantic by paying Atlantic for those amounts which the architect, Schoenhardt, had issued certificates for payment. Finally, the Town argues that since there is no evidence that it deviated in any way from its contract with Atlantic, no genuine issue of material fact exists and therefore it is entitled to judgment as a matter of law.
That was responded to on September 22, 1992 by the plaintiff's objection to motion for summary judgment (#123). In that objection Hartford maintains that viewing all the CT Page 10394 facts in the complaint in favor of the plaintiff, a prima facie case has been made against the Town under four legal theories: (1) breach of contract; (2) negligence; (3) breach of fiduciary duty; and (4) agency. It claims therefore, that based on the foregoing, the Town's motion for summary judgment should be denied.
"In any action . . . any party may move for a summary judgment . . . ." Practice Book 379. "The party seeking summary judgment bears the burden of showing the nonexistence of any material fact, which is any fact that will make a difference in the result of a case." Bassin v. Stamford, 26 Conn. App. 534, 537, 602 A.2d 1044 (1992).
 [T]he party opposing the motion "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted). The mere presence "of an alleged adverse claim is not sufficient to defeat a motion for summary judgment." Farrell v. Farrell, 182 Conn. 34, 39, 438 A.2d 415 (1980). Rather, "the [plaintiff] must recite specific facts . . . which contradict those stated in the [defendant's] affidavits and documents." Id., 39-40.
Cummings and Lockwood v. Gray, 26 Conn. App. 293, 297,600 A.2d 1040 (1991).
"`[I]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . . The test is whether a party would be entitled to a directed verdict on the same facts." Farmington v. Dowling, 26 Conn. App. 545, 548-49,602 A.2d 1047 (1992), quoting Cummings and Lockwood v. Gray, supra. When a court begins its decisionmaking process its "`function is not to decide issues of material fact, but rather to determine whether any such issues exist.'" Scinto v. Stamm,42 Conn. Sup. 144, 147 (1992), quoting Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). And if there is no genuine issue as to any material fact "`judgment shall be rendered forthwith [in favor of] . . . the moving party . . . .'" CT Page 10395 Bassin v. Stamford, supra, 538.
The defendant, the Town, cites the case of New Haven v. National Steam Economizer, 79 Conn. 482, 65 A. 959 (1907) (hereinafter "Economizer"), as being directly on point with the present case. In that case the contractor had a contract with the City of New Haven to install a heating and ventilating apparatus in one of its schools. Id., 483. The contract stated that all payments were to be made upon written certificates from the architect. Id. The contractor also entered into a bond agreement with the American Surety Company to guarantee the full performance of its contract with the City. Id., 485. Subsequently, the City terminated the contractor and assumed charge of the work, because of the contractor's failure to prosecute the work with diligence and because it was in default of performance of its agreements. Id.
Stopping here, it is noteworthy to point out that although the factual scenarios of this case and Economizer are similar, the two cases can be distinguished in one fundamental respect. While this case involves an action by the surety to recover sums that were allegedly negligently paid to the contractor, Economizer involved an "[A]ction [by the cityowner] against a contractor and his surety, upon their bond, to recover damages for breach of the former's contract . . ." Id., 482-83. (Emphasis added.)
The Economizer court began its opinion by analyzing the two contracts at issue: (1) the construction contract between the City and the contractor; and (2) the second contract involving the surety together with the two parties to the construction contract. Id., 487. This leads us to the second fundamental difference between this case and Economizer: In this case, the Town maintains that it is the terms of the contract between the owner (the Town of Mansfield) and the contractor (Atlantic) that determine the conduct of both parties in relation to the surety. Defendant's Motion for Summary Judgment, p. 7). But the court in Economizer, a case used by the defendant as authority for its position, clearly stated that it was the second contract involving the surety, owner and contractor "which creates and defines [the surety's] obligation and liability . . ." Id. More importantly, that court opined that "[H]aving by the bond assumed a liability measured and determined in part by the terms of the contract whose performance it has guaranteed, it is important to it that this CT Page 10396 liability should not be changed by the substitution, by whatever means of a different contract. . . ." Id., 488. (Emphasis added.)
Although the Economizer court ruled in favor of the City as against the surety, that court also held that the liabilities of the parties were measured by the contract involving the surety, owner and contract and at least in part by the contract between the owner and the contractor. Since the Town maintains in this case that its contract with Atlantic exclusively governs its liability, its reliance on Economizer is misplaced. Therefore, viewing the facts of the complaint in the light most favorably to the nonmoving party (Hartford), there is at least a genuine issue of material fact as to which contract(s) governs the liability of this surety.
Next, Hartford claims that an owner/obligee owes a legal duty to its surety to safeguard contract funds and to distribute them with reasonable care in accordance with contractual provisions. (Plaintiff's objection to motion for summary judgment, p. 6). It further claims that the Town departed from its contract with Atlantic by negligently disbursing those funds (Id. pp. 11-12). It even cites village of Chester v. Leonard, 68 Conn. 495, 37 A. 397 (1896-1897), to support its proposition that material departures from the execution of a contract will release the obligations of a surety. Id., 508. The question then becomes did the Town materially depart from the contract?
The Town argues that Hartford's complaint, like that in Economizer requires the architect to issue to the owner a certificate for payment as a prerequisite to the Town's duty to pay. (Defendant's Memorandum of Law in Support of Motion for Summary Judgment, p. 7). It even points to article 9.4.1. (Exhibit #1, attached to Defendant's Memorandum of Law, #120) of the "General Conditions of the Contract for Construction" which states "the architect will . . . after receipt of the contractor's application for payment . . . issue to the owner a certificate for payment . . . for such amount as the architect determines is properly due . . ." As a result, the Town maintains that since it did everything it was entitled and required to do, there is no evidence that it deviated from the construction contract in any way with respect to its duty to make payments.
CT Page 10397 Hartford then counters in its objection by citing to paragraph 11 of the complaint where it alleges that "[P]rior to the termination of Windsor Electric by Atlantic, and acting in reliance upon the written certification of payment requisitions from Schoenhardt, as well as in reliance upon its own personnel's inspection of the work, the town certified, accepted, and paid Atlantic $226,088.00 for electrical work . . . ." (Emphasis added). As a result, Hartford maintains that the Town's reliance upon its own personnel's inspection of the work, furnishes evidence that it did deviate from the construction contract.
Understanding the position of the two parties leads to but one conclusion: Since the court is obligated to view the evidence in the light most favorably to the nonmoving party, and since there at least appears to be a question as to whether the Town materially departed from its contract with Atlantic, the defendant's motion for summary judgment should be denied.
Lastly, the plaintiff raises, for the first time, an argument based on the theory of agency. It alleges that Schoenhardt, the architect, acted as the Town's agent and that alternatively its breach and negligence should be imputed to the Town. But as the Town accurately points out in its reply to the plaintiff's objection dated October 5, 1992, Hartford failed to allege liability under an agency theory in its own complaint. In fact, paragraph twenty-four of the complaint specifically alleges that both the town and the architect owed separate and independent duties to the plaintiff. Since the plaintiff failed to allege liability based on agency in its own complaint, this issue should not even be addressed.
Since a genuine issue of material fact exists as to whether the Town's liability is governed exclusively by the construction contract and as to whether the Town materially departed from that contract, the motion for summary judgment should be denied.
HARRY M. JACKAWAY JUDGE, SUPERIOR COURT CT Page 10398